# UNTIED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEITH ROSS** | **COMPLAINT** |
| **RONNIKINIA CALLOWAY** | |
| *PLAINTIFFS* | |
| | |
| **VERSUS** | **CIVIL ACTION #_____** |
| | |
| **ORVILLE CALLAHAN,** | |
| **INDIVIDUALLY AND IN HIS** | |
| **OFFICIAL CAPACITY AS THE** | |
| **HOUMA CITY MARSHAL,** | |
| **HOUMA CITY MARSHAL'S** | |
| **OFFICE** | |
| **DEPUTY MARSHAL A** | |
| **DEPUTY MARSHAL B** | |
| **DEPUTY MARSHAL C** | |
| *DEFENDANTS* | |

_____

## COMPLAINT

_____

## INTRODUCTION

1.     This is a combined civil rights and personal injury action to obtain damages

for violations of Plaintiffs' constitutional rights arising from injuries sustained by

Plaintiffs',  disabled individuals, when Defendants, acting upon preconceived

notions about Plaintiffs' disabilities, assaulted and battered them and placed them

under arrest on false charges, applied excessive force, and incarcerated Plaintiff Ross without cause. The arresting officers' actions were the result of the Houma City Marshal's Office and the City Marshal, Orville Callahan's customs, policies, practices, and/or procedures. Plaintiffs respectfully request the Court to review the facts herein and provide judgment and relief as is required under the laws of the United States and the United States Constitution.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this Plaintiff's federal claims and this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1988, and 12131 *et. seq.*, as well as the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution. The Court has supplemental and/or pendent jurisdiction to consider Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

4.     Plaintiffs respectfully demand a trial by jury of all issues in this matter, including but not limited to damages.

## PARTIES

5.     Plaintiff,  Keith Ross ("Ross"), is an individual and a citizen of the United States who resides in Terrebonne Parish, La.

6.     Plaintiff, Ronnikinia Calloway, ("Calloway") is an individual and a citizen of the United States who resides in Terrebonne Parish, La.

7.     Defendant Orville Callahan ("Callahan") was, at all times relevant to this action, the duly elected Marshal for the City of Houma and in that capacity is the chief executive officer of City Court of Houma and the City Marshal's Office. As such, at all times pertinent hereto he was responsible for establishing policies, procedures, practices, rules, and regulations. He was also responsible for the selection, hiring, training and supervision of its officers. He is sued here in his personal and official capacity.

8.     Defendant Houma City Marshal's Office ("HCMO") is a political subdivision and state office created by Louisiana constitutional and statutory law.

9.     Defendant Deputy Marshal A ("DMA") is on information and belief a resident of the Parish of Terrebonne and, at all times relevant to this action, was employed by the HCMO and / or Callahan and under his supervision and direction. He is sued in his personal and official capacity.

10.     Defendant Deputy Marshal B ("DMB") is on information and belief a resident of the Parish of Terrebonne and, at all times relevant to this action, was employed by the HCMO and / or Callahan and under his supervision and direction. He is sued in his personal and official capacity.

11.     Defendant Deputy Marshal C ("DMC") is on information and belief a resident of the Parish of Terrebonne and, at all times relevant to this action, was employed by the HCMO and / or Callahan and under his supervision and direction. He is sued in his personal and official capacity.

## FACTUAL ALLEGATIONS

12.     Plaintiffs suffer from mental disability and are disabled individuals, as that term is defined by both the Americans with Disabilities Act (42 U.S.C. §§ 12131-12165) (the "ADA") and Louisiana law.

13.     The named defendants individually and collectively, at all times pertinent hereto had knowledge of the Plaintiff's disabilities, having dealt with them on previous occasions.

14.     All Defendants undertook the actions complained of while within the scope of their job duties as employees of the City Marshal and HCMO or as the City Marshal.

15.     All of the statutory or constitutional rights that are alleged to have been violated herein by Defendants were clearly established at the time of the challenged conduct.

16.     The HCMO is vicariously liable as a result of the  purposeful and /or deliberately indifferent conduct of its employees as alleged hereinafter.

17.     At no time did the actions of either Plaintiff cause a threat, real or perceived, to human life.

18.     The blatant disregard for and egregious mistreatment of  persons with mental and or emotional disabilities is a longstanding practice and/ or custom which constitutes the standard operating procedure of the City Marshal and the City Marshal's Office.  Further, this policy is reflected in the operation of Houma City Court under the purview of the City Marshal and the City Marshal's Office.

19.     At no time did the actions of either Plaintiff constitute or cause exigent circumstances.

20.     By blatantly violating the constitutional rights of Plaintiff Ross and using excessive force, City Marshal Orville Callahan reinforced the policy of deliberate indifference and conscious disregard for the rights of Plaintiffs.

AS TO PLAINTIFF ROSS

21.     On or about October 2, 2017, Plaintiff was present in Houma City court for an unrelated matter. Believing that he had conversed with an inmate who was "in the box" for a court hearing, DMA yelled at Plaintiff not to converse with the inmates. A second group of inmates was brought in and DMA again believed that Plaintiff had conversed with an inmate.  Whereupon DMA began cursing and screaming at Plaintiff.  At that time, Plaintiff was forcefully attacked, thrown on the floor, punched and beaten by Marshall Callahan and DMA.

22.  Plaintiff was placed under arrest and cuffed behind his back.  Unable to walk due to the injuries, shock and trauma of the situation, Plaintiff was carried out of the courtroom and in exiting, defendants Callahan and DMA rammed his head into a wall, leaving a marked indention in the wall.

23.     Plaintiff was charged with resisting an officer, disturbing the peace and simple assault, all without probable cause and, on information and belief, for the sole purpose of attempting to justify and cover up their assault on Plaintiff. Defendants Callahan and DMA then, upon information and belief, dragged Plaintiff to the police transport and roughly shoved him in the vehicle.

24.     They caused Plaintiff to be transported to the Terrebonne Parish Criminal Justice Complex where, at their direction, he was wrongfully incarcerated and held against his will, without legal justification or cause.

25.     The defendants knew that they had injured Plaintiff, and that he required medical attention, but upon information and belief, while acting pursuant to a policy or custom of the HCMO, ignored Plaintiff's injured condition and need for medical attention and denied Plaintiff any medical attention or examination. Upon information and belief, the HCMO officers also misrepresented the circumstances of Plaintiff's arrest and physical condition to officers of the Terrebonne Parish Criminal Justice Complex which contributed to the failure of those officers to acknowledge and appropriately respond to Plaintiff's injuries.

26.     As a direct, sole and proximate result of the incidents complained of, Plaintiff  Ross was caused to and did sustain serious physical injury, humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, disturbance and disruption of life, legal expenses and medical expenses.

AS TO PLAINTIFF CALLOWAY

27.     On or about June 19, 2018, Plaintiff Calloway went to Houma City Court with her minor son as instructed by the son's attorney.  While in the courtroom, she

asked to speak with the attorney as her son was not on the docket.  Unable to do so, she went immediately outside of the courtroom into the foyer and was speaking with the gentleman at the security desk, (upon information and belief "Rodney").

28.     At that point in time, DMB came out of the courtroom and addressed Plaintiff, telling her to get out of the courthouse.  He then addressed Rodney, telling him that he did not want him to "f...ing talk to her" and that he wanted her out of the courthouse.

29.     Plaintiff immediately distanced herself from the situation and went around the corner to advise the staff at the Juvenile "window" what had transpired. She stated that she would be outside with her son in case they were called as she did not want a warrant to be issued for his failure to appear.

30.     The staff member at the juvenile window told Plaintiff to wait where she was and advised that she would go into the courtroom to notify the court personnel of the situation.

31.     At that point in time, DMC came around the corner and began threatening, harassing and intimidating Calloway.  Plaintiff repeatedly asked DMC to leave her alone and let her "calm her nerves".  DMC failed to heed her request.

32.     DMB suddenly reappeared and began screaming at Plaintiff that he had told her to leave the courthouse.  Plaintiff attempted to explain that she was waiting per

the instructions of the staff member for juvenile matters. Plaintiff asked DMB to leave her alone and questioned why he was trying to provoke her.

33.     Without heeding Plaintiff's request or answering her question, DMB suddenly and forcefully grabbed plaintiff and smashed her face into the brick wall.

34.     DMB then wrenched Plaintiff's arms behind her back, injuring her shoulder, and cuffed her, ignoring Plaintiff's protestations that she had a "bad arm".

35.     Plaintiff complained to the Deputy Marshals that the cuffs were too tight and that she was losing feeling in her fingers. DMB ignored her pleas, however DMC attempted to place a finger between the cuffs and her wrist and found that he could not do so.  He then loosened the cuffs.

36.     A police officer with the City of Houma then approached Plaintiff in an understanding and comforting manner and managed to calm Plaintiff somewhat, thus de-escalating the situation.  The police officer eventually released plaintiff with a summons for disturbing the peace by cursing.

37.     As a direct, sole and proximate result of the incidents complained of, Plaintiff Calloway was caused to and did sustain serious physical injury, humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, disturbance and disruption of life, legal expenses and medical expenses.

## FIRST CAUSE OF ACTION

EXCESSIVE FORCE

38.     Plaintiffs incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

39.     Acting under color of law, Defendants intentionally, negligently, and with complete and deliberate indifference for Plaintiffs' rights, caused Plaintiffs to be deprived of their constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983, by: a) using a degree of force that was unreasonable under the circumstances, and in violation of Plaintiffs' rights to be free of an unreasonable seizure under the Fourth Amendment; and b) depriving Plaintiffs of their liberty by subjecting them to unwarranted and unreasonable restraints on their persons without due process in violation of their rights under the Fourteenth Amendment of the United States Constitution.

40.     The Defendants, under color of law, intentionally, negligently, and with complete and deliberate indifference to Plaintiffs' rights, caused Plaintiffs to be deprived of their constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983. Plaintiffs' injuries and deprivations of constitutional rights were proximately caused by the:

a) inadequate supervision of the training and conduct of  HCMO employees, including DMA,  DMB and DMC; b) failure to enforce the laws of the State of Louisiana and the provisions of the Constitution of the United States; and c) issuance of vague, confusing, and contradictory policies concerning the use of force that are inconsistent with the requirements of the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

41.    The policies and customs of Defendant HCMO caused the violation of Plaintiffs' right to be free from the use of excessive force. At the time of the incident described above, it is averred that neither Callahan nor his employees / deputy marshals had received any special training, nor had any specific and adequate policies regarding the treatment of individuals with mental or emotional disability or handicap. The deliberate indifference of failing to have a specific and adequate policy on the use of force on citizens with physical and/or mental disabilities or handicaps, a fairly significant portion of the population, results in the highly predictable consequence that citizens' constitutional rights will be violated.

42.    Callahan's actions were also the result of his failure, as a matter of policy and practice, to implement policies regarding the use of force on persons with mental or emotional disability or handicap.

## SECOND CAUSE OF ACTION

## FALSE ARREST, FALSE IMPRISONMENT, AND MALICIOUS PROSECUTION

43.    Plaintiffs incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

44.    As alleged above, Plaintiff  Ross was arrested and charged with disturbing the peace, resisting an officer and simple assault without probable cause and for the purpose of punishing Plaintiff  because he reacted to DMA's egregious treatment of yelling and cursing at him as well as Callahan's unfounded attack upon his person.

 45.    As alleged above, Plaintiff  Calloway was arrested and charged with disturbing the peace by cursing without probable cause and for the purpose of punishing Plaintiff  because she reacted to DMB and DMC's egregious treatment of yelling and cursing at her and ordering her to leave the premises without justification, as well as DMB's  violent and excessive force against her.

46.    Defendants charged Plaintiffs as alleged above without probable cause and solely to cover up their illegal and unconstitutional use of excessive force upon Plaintiffs.

47.    Plaintiffs were conscious of the false arrest and confinement.

48.    As a direct, sole and proximate result of the false arrest and imprisonment, Plaintiffs were caused to and did sustain serious physical injury, humiliation and embarrassment, emotional and mental distress, moral and mental degradation, indignity and disgrace, injury to personal reputation, inconvenience, disturbance and disruption of life, legal expenses and medical expenses.

49.    The policies and customs of HCMO and City Marshal Callahan caused the violation of Plaintiffs' right to be free from false arrest and false imprisonment as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION

ASSAULT & BATTERY

50.    Plaintiffs incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

51.    The above described arrests and detainment of Plaintiffs by the Defendants constitute assault and battery against Plaintiffs under the laws of the State of Louisiana. Defendants intentionally initiated offensive bodily contact with

Plaintiffs.  Defendants engaged in physical conduct that unjustifiably placed Plaintiffs in imminent apprehension of harmful contact that is unreasonable under the laws of the State of Louisiana.

52.     As a result of the assault and battery upon their persons by Defendants, Plaintiffs have suffered severe and permanent physical and mental pain and distress.

53.     HCMO and Callahan negligently caused the above described injuries to Plaintiffs by failing to properly train, supervise and control the conduct of Callahan and employees.

54.     HCMO and Callahan as the employer of the Deputy Marshals, are liable under the doctrine of *respondeat superior* for the tortious conduct of the individual Defendants.

FOURTH CAUSE OF ACTION

VIOLATION OF THE ADA

55.     Plaintiffs hereby incorporate the referenced paragraphs as if fully set forth here and further alleges as follows:

56.     The HCMO, the City Marshal and the City Court of Houma, of which Callahan is the chief executive officer are "public entities" as those terms are defined by the ADA and State law.

57.     At all times relevant to this action, Plaintiffs were disabled, as that term is defined by the ADA, and entitled to reasonable accommodation as a result of their disability and to be free from discrimination on the basis of their disability.

58.     At all times pertinent hereto, Plaintiffs was qualified to participate in or receive the benefit of the public entities' services, programs or activities.

59.     Because the ADA covers public "services, programs, or activities," § 12132, the ADA's accommodation requirement  encompasses anything a public entity does, including but not limited to holding court, keeping the peace and making arrests.

60.     Defendants HCMO and Callahan by and through their officers, agents and employees were obligated to provide Plaintiffs with reasonable accommodations that Plaintiffs required in order to utilize public services in the same manner and to the same extent as nondisabled individuals.

61.     While acting within the course and scope of their duties as City Marshal and employees of the HCMO, Callahan, DMA,  DMB, and DMC consciously chose to

engage with Plaintiffs in a hostile, belligerent and vitriolic manner,  further exacerbating their mental health crises and creating  unnecessary altercations.

62.     While acting within the scope of their duties as City Marshal and employees of the City Marshal and HCMO, the Defendants intentionally and willfully failed to respect Plaintiffs' comfort zones, engage Plaintiffs in non-threatening communications or use the passage of time to defuse the situations rather than precipitating  confrontations.

63.  The actions engaged in by Defendants were without any reasonable basis but for discrimination against Plaintiff s based on their disability, in violation of the ADA.

64.     As a direct and proximate result of the afore stated violations of the ADA, Plaintiffs suffered damages, including permanent personal injuries, pain and suffering, embarrassment and humiliation, emotional distress, and other damages.

FIFTH CAUSE OF ACTION

NEGLIGENCE

65.   Plaintiffs incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

66.    The above described actions of Defendants as well as the  arrest and detainment of Plaintiffs,  constitute negligence and gross negligence under the laws of the State of Louisiana and La. Civil Code 2315, et. eq.

67.    The conduct of Defendants in failing to properly train, supervise and control the conduct of employees or principles constitutes negligence and gross negligence under the laws of the State Louisiana.

68.    Defendant HCMO and Callahan as the employer of  DMA, DMB, and DMC are liable under the doctrine of *respondeat superior* for the negligent conduct of the individual Defendants.

## SIXTH CAUSE OF ACTION

WILLFUL & WANTON CONDUCT

69.    Plaintiffs  incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

70.    Callahan and DMA in tackling and punching Plaintiff Ross, dragging him and ramming his head into a wall, acted in an extreme and outrageous manner, intentionally and with reckless disregard for Plaintiff's welfare, and inflicted severe and permanent physical and emotional distress on Plaintiff.

71.   The conduct and force used by Callahan and DMA in tackling and punching Plaintiff Ross, dragging him and ramming his head into a wall, were excessive and undertaken without legal provocation, in violation of Plaintiff's rights to integrity and privacy in his person.

72.   DMB in slamming plaintiff Calloway's face into the brick wall and wrenching her arms and shoulder, acted in an extreme and outrageous manner, intentionally and with reckless disregard for Plaintiff's welfare, and inflicted severe and permanent physical and emotional distress on Plaintiff.

73.   The conduct and force used by DMB in slamming plaintiff Calloway's face into the brick wall and wrenching her arms were excessive and undertaken without legal provocation, in violation of Plaintiff's rights to integrity and privacy in her person.

74.   The conduct and force used by the Defendants upon Plaintiffs was intentional, malicious, excessive, and in reckless disregard of Plaintiffs' constitutional rights; furthermore, their conduct was grossly offensive and disproportionate to the situation at hand, and shocks the conscience.

75.   Upon information and belief, Callahan and DMA, knowing that Plaintiff Ross needed to be transported to the hospital for treatment, willfully, wantonly, recklessly and with depraved indifference to Plaintiff's health, did refuse to allow

him to be taken to the hospital and instead transported him to the Jail where they willfully failed to report the injuries they inflicted upon him by their excessive use of force.

76.    Additionally, Callahan negligently caused the above-described injuries to Plaintiffs by failing to properly train, supervise and control the conduct of DMA, DMB, and DMC.

77.    The HCMO and Callahan negligently caused the injuries to Plaintiffs by failing to establish a policy for interaction with and /or arrest of persons with mental disabilities although he knew or should have known that such policies were necessary or that the policies and practices in place were inadequate to prevent abuse, discrimination and harm.

78.    The HCMO and Callahan negligently caused the above-described injuries to Plaintiffs by failing to properly train, supervise and control the conduct of employees.

79.    The HCMO and Callahan as the employer are liable under the doctrine of *respondeat superior* for the tortious conduct of the individual Defendants.

## SEVENTH  CAUSE OF ACTION

NEGLIGENCE

80.    Plaintiffs incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

81.    The HCMO and Callahan, their agents, servants and/or employees, individually and in their official capacities, were careless, reckless and negligent in conducting and performing City Marshal duties, including, in part, the negligent use of force in detaining, arresting and confining Plaintiffs; carelessly, recklessly and negligently investigating the circumstances leading up to Plaintiffs' arrests and confinement; violating established rules, procedures and policies; and negligently employing, supervising and training members of the Houma City Marshal's Office.

82.    As a direct, sole and proximate result of the above-stated acts of carelessness, recklessness and negligence of  HCMO and Callahan, its agents, servants and/or employees, Plaintiffs were caused to and did sustain serious, disabling and permanent personal injuries, pain and suffering, humiliation and embarrassment, emotional and mental distress, inconvenience, and medical expenses.

83.     Plaintiffs' injuries and damages were caused solely by reason of Defendants' culpable conduct, as stated herein, without any fault or negligence on the part of Plaintiffs contributing thereto.

## EIGTH CAUSE OF ACTION

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84.     Plaintiffs incorporate the above referenced paragraphs as if fully set forth here and further alleges as follows:

85.      The conduct of Defendants to which Plaintiffs were subjected as detailed hereinabove was extreme and outrageous; the emotional distress suffered by the Plaintiffs was severe; and the Defendants desired or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

86.     As a result, Plaintiffs have suffered severe emotional distress and resulting damages.

## RELIEF

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory and punitive damages, in an amount to be determined at trial, by reason of Defendants' tortious conduct and Defendants' efforts to deprive, and their conspiring to deprive, Plaintiffs of their constitutional and civil rights under

color of state law. Plaintiffs further demand attorney's fees and costs pursuant to

42 U.S.C.A. § 1988 and any other relief the court deems proper.


Respectfully Submitted by,

SMITKO LAW, APLC


_____
Jerri G. Smitko #17807
Maxwell P. Smitko #37317
622 Belanger Street
P.O. Box 1669
Houma, La.  70361
Telephone (985) 851-1313
Facsimile   (985) 851-1250
Attorney for Plaintiffs